UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-21846-BLOOM/Elfenbein

BLANCA MACHADO,

    Plaintiff,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY;
U.S. CITIZENSHIP AND IMMIGRATION SERVICES;
KRISTI NOEM, in her official capacity as Secretary of
the Department of Homeland Security; KIKA SCOTT,
in her official capacity as Acting Director of U.S.
Citizenship and Immigration Services; and VARSENIK
PAPAZIAN, in her official capacity as Director of the
USCIS Miami Asylum Office,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants United States Department of Homeland Security ("DHS"), United States Citizenship and Immigration Services ("USCIS"), Secretary of the Department of Homeland Security Kristi Noem ("Noem"), Acting Director of USCIS Kika Scott ("Scott"), and Director of the USCIS Miami Asylum Office Varsenik Papazian's ("Papazian") (collectively ("Defendants")) Motion to Dismiss Complaint for Writ of Mandamus and Injunctive Relief Under the Administrative Procedures Act ("Motion"). ECF No. [11]. The Court referred the Motion to Magistrate Judge Marty Fulgueira Elfenbein for a Report and Recommendation ("R&R"). ECF No. [21]. Judge Elfenbein issued her Report and Recommendation, ECF No. [22], to which Defendants timely filed Objections. ECF No. [23]. Thereafter, Plaintiff filed a Response to Defendants' Objections ("Response"). ECF No. [24]. For

the reasons that follow, the Court adopts the R&R in part, rejects the R&R in part, and grants Defendants' Motion to Dismiss.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action arises from Plaintiff's application for asylum protection filed with USCIS on January 24, 2022. ECF No. [1] at ¶ 3. Plaintiff's application has been pending for more than three years, and USCIS has yet to schedule an interview or otherwise adjudicate her application. Id. at ¶ 14. Plaintiff contends that the delayed adjudication is the result of USCIS's last-in, first-out ("LIFO") policy. Id. at ¶ 20.

Pursuant to the policy, Plaintiff alleges that USCIS schedules interviews in the following order of priority: "(1) applications that were scheduled for an interview, but the interview was rescheduled; (2) applications that have been pending 21 days or less; and [lastly] (3) all other pending asylum applications starting with newer filings and working backward to older filings." Id. at ¶ 16. Because Plaintiff's application has been pending for more than 21 days, her application has fallen into the third category. Accordingly, since USCIS reviews asylum applications in the third category from newest to oldest, and "the number of new asylum claims filed on a daily basis is larger than the number of asylum interviews scheduled per day," the Complaint alleges that Plaintiff's "application will never be scheduled for an interview or fully adjudicated under Defendants' scheduling policies." Id. Therefore, because USCIS's policy purportedly renders it impossible for Plaintiff to have her asylum application adjudicated, she filed the instant action asserting two claims.

In Count I, Plaintiff asserts that Defendants violated the Administrative Procedures Act ("APA"), due to their failure to perform "their non-discretionary duty to adjudicate Plaintiff's asylum application within a reasonable time." Id. at ¶ 20. Count II seeks mandamus relief, as

Plaintiff has a right and Defendants have a duty to adjudicate an asylum application within a reasonable time, and Defendants' failure to adjudicate Plaintiff's application to this point constitutes a breach of that duty. *Id.* at ¶ 25.[1]

Defendant moves to dismiss the Complaint, arguing that Plaintiff has failed to state a claim in Count I, and the Court lacks jurisdiction to provide the relief requested in Count II. *See* ECF No. [11] at 1-2. Regarding Count I, Defendants contend that while Plaintiff alleges that the delay has been unreasonable, Plaintiff has not identified any instructive deadlines, let alone statutory or regulatory requirements mandating that her asylum application be adjudicated within a specific timeframe. *See id.* at 3. According to Defendants, the delay Plaintiff has experienced thus far is also not unique or unreasonable and is unfortunately an inherent "frustration" of the immigration process. *Id.* at 5.

As for Count II, Defendants argue that the Court lacks statutory jurisdiction to provide mandamus relief because Defendants have discretion to determine the pace of adjudications, as Defendants have no duty to adjudicate asylum claims within a specific timeframe. *Id.* at 6. Additionally, Defendant argues there is no mandamus jurisdiction because Plaintiff has adequate relief available under the APA. *Id.* at 7.

The Court referred Defendants' Motion to Judge Elfenbein for a Report and Recommendation ("R&R"). ECF No. [22]. In her R&R, Judge Elfenbein first recommended that the Court dismiss Plaintiff's Mandamus Act claim in Count II because the Court lacks statutory jurisdiction over the claim. *Id.* at 14. Judge Elfenbein explained that to establish jurisdiction under the Mandamus Act, Plaintiff must demonstrate that she "has a clear right to the relief she seeks

---

[1] As a remedy, Plaintiff requests that Defendants be compelled to conduct an asylum interview within 30 days, and within 30 days of the interview, render a decision on her asylum claim. *See* ECF No. [1] at 7.

[i.e., an interview within 30 days and adjudication within 30 days thereafter], Defendants have a clear duty to provide it, and she has no other adequate remedy." *Id.* at 13. Judge Elfenbein concluded that Plaintiff failed to establish that she has a clear right to relief or that Defendants have a clear duty to provide the relief sought, as the relevant statute and governing regulations do not impose a "clear and mandatory duty to adjudicate [applications] within her 'preferred timeframe." *Id.* Accordingly, no jurisdiction exists to adjudicate Count II.

However, with respect to Count I, Judge Elfenbein determined that Plaintiff plausibly alleged an APA violation based on her allegation that the LIFO policy "does not merely delay adjudication but instead makes adjudication mathematically impossible." *Id.* at 14. According to Judge Elfenbein, although the law is clear that Defendants have absolute discretion when it comes to setting the pace and timing for review of immigration applications, Defendants do not have any discretion as to whether they will adjudicate an application at all. *Id.* at 14-15. Consequently, Judge Elfenbein found that because 5 U.S.C. § 555 and 8 C.F.R. § 208.9(a) require Defendants to eventually adjudicate an asylum application, and because Plaintiff alleges that the LIFO policy creates a situation where her application will never be reviewed, Plaintiff has established that Defendants violated the APA by failing to carry out their non-discretionary duty. *Id.* at 15-16. As such, Judge Elfenbein recommended that the Court should deny Defendants' Motion to the extent it seeks to dismiss Plaintiff's APA claim in Count I. *Id.* at 16.

Defendants timely filed Objections to the R&R, disagreeing with Judge Elfenbein's conclusion that Plaintiff plausibly established that her asylum application will never be adjudicated due to Defendants' LIFO policy. ECF No. [23] at 2. According to Defendants, "Plaintiff's Application will [be] adjudicated consistent with the LIFO policy," which courts have routinely found to be reasonable as a matter of law. *Id.*

4

Plaintiff responds that, at the pleadings stage, the Court must accept as true Plaintiff's allegation that "Defendants' Last-In, First-Out ("LIFO") policy 'renders such adjudication a mathematical impossibility.'" ECF No. [24] at 2. Plaintiff maintains that Defendants' argument that the application will eventually be adjudicated (consistent with the LIFO policy) constitutes a factual attack and is thus inappropriate to consider at this juncture. *See id.*

Furthermore, while Defendants contend that courts have found the LIFO policy to be reasonable, Plaintiff argues that those cases involved dissimilar allegations to those contained in her Complaint. *See id.* at 4. According to Plaintiff, none of the cases relied upon by Defendants involved indefinite delays, but rather only lengthy delays. As such, those cases do not support a dismissal of her APA claim.

## II.    LEGAL STANDARD

In reviewing a report and recommendation, the district court may accept, reject, or modify, in whole or in part, a magistrate judge's recommendation. 28 U.S.C. § 636(b)(1). "In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (alterations omitted) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)). The objections must also present "supporting legal authority." S.D. Fla. L. Mag. J.R. 4(b). The portions of the report and recommendation to which an objection is made are reviewed *de novo* only if those objections "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see also* Fed. R. Civ. P. 72(b)(3). If a party fails to object to any portion of the magistrate judge's report, those portions are reviewed for clear error. *Macort*, 208 F. App'x at 784 (quoting *Johnson v. Zema Sys.*

*Corp.*, 170 F.3d 734, 739 (7th Cir. 1999)); *see also Liberty Am. Ins. Grp., Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1276 (M.D. Fla. 2001).

"It is improper for an objecting party to . . . [submit] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R." *Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) (quoting *Camardo v. Gen. Motors-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)).

### III.  ANALYSIS

Because neither party objected, and the Court finds no clear error in the R&R's recommendation that the Mandamus Act claim be dismissed for lack of statutory jurisdiction,[2] the Court adopts Judge Elfenbein's reasoning and dismisses Count II. Accordingly, the only question left for the Court to resolve is whether Judge Elfenbein erred by concluding that Plaintiff plausibly established an APA violation based on her allegation that the LIFO policy renders it mathematically impossible for USCIS to ever review her asylum application.[3]

In her R&R, Judge Elfenbein distinguished the factual allegations in this case from the many other district court decisions where courts have concluded that the LIFO policy constitutes a valid rule of reason[4] by pointing to Plaintiff's allegation that the LIFO policy renders it

---

[2] Neither Plaintiff nor Defendants objected to Judge Elfenbein's conclusion that Count II—the Mandamus should be dismissed for lack of statutory jurisdiction. *See* ECF Nos. [23], [24]. Accordingly, the recommendation as to Count II is reviewed for clear error. *See Macort*, 208 F. App'x at 784.

[3] Because Defendants specifically objected to the portion of the R&R addressing the plausibility of Count I, the Court is required to review the issue *de novo*. *See Schultz*, 565 F.3d at 1360.

[4] *See e.g.*, *Marmol v. McHenry*, No. 25-CV-20499, 2025 WL 1865120, at *3 (S.D. Fla. July 7, 2025) ("Courts routinely hold that LIFO "is a rule of reason[.]") (citing *Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1317 (S.D. Fla. 2023) (collecting cases)).

mathematically impossible for Defendants to review Plaintiff's asylum application. In essence, Judge Elfenbein concluded that the difference between allegations of an unreasonable delay and an allegation of an indefinite delay was dispositive here, as the LIFO policy cannot satisfy the rule of reason if Plaintiff's application is never adjudicated. However, the Court finds that parsing the difference between Plaintiff's allegations and allegations in prior cases is unnecessary because the LIFO policy currently in effect will not foreclose review of Plaintiff's asylum petition.

Although the Court must generally accept Plaintiff's allegations as true at the pleadings stage, the Court is permitted to reject allegations by taking judicial notice of documents retrieved from government websites that rebut a party's factual allegation. *See Sprengle v. Smith Mar. Inc.*, 660 F. Supp. 3d 1337, 1350 (M.D. Fla. 2023) (explaining that a court may consider judicially noticed documents at the motion to dismiss stage) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-79 (11th Cir. 1999)); *Anderson v. United States*, 245 F. Supp. 2d 1217, 1221 (M.D. Fla. 2002) ("The court will not accept as true allegations that are contradicted by facts that can be judicially noticed . . ..") (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1363 (2d e.1990)); *see also Abasov v. United States Citizenship & Immigr. Servs.*, No. 25-CV-1793 (PKC), 2025 WL 3706663, at *4, n. 7 (E.D.N.Y. Dec. 22, 2025) (specifically recognizing that the court may take judicial notice of government websites); *Singh v. U.S. Citizenship & Immigr. Servs.*, No. 24-CV-3003 (LDH), 2025 WL 964145, at *1 n.3 (E.D.N.Y. Mar. 31, 2025) (same) (citing *Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023)). Looking to USCIS's website,[5] in addition to the general policy of reviewing asylum applications

---

[5] *See* U.S. Citizenship and Immigration Services, Affirmative Asylum Interview Scheduling, https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last accessed Feb. 12, 2026) ("USCIS assigns some of its asylum officers to complete affirmative asylum applications pending in the backlog, starting with the oldest applications and working forward. This permits some of the oldest pending applications to be completed in chronological order.").

from newest to oldest, the agency "introduced 'a second track, [in 2024,] in which other asylum officers are assigned to I-589s in the backlog, starting with the oldest applications and working forward." *Abasov v. United States Citizenship & Immigr. Servs.*, No. 25-CV-1793 (PKC), 2025 WL 3706663, at *4 (E.D.N.Y. Dec. 22, 2025) (citing Affirmative Asylum Interview Scheduling, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-interview-scheduling (last updated Mar. 29, 2024) (explaining that the second track "permits some of the oldest pending applications to be completed in chronological order"); *see also Tikhonov v. Mayorkas*, No. 23-24572-CIV, 2024 WL 4692146, at *5 (S.D. Fla. Nov. 6, 2024) ("USCIS bolstered its LIFO methodology by beginning to schedule affirmative asylum interviews along two tracks simultaneously. DOJ 019. The first track uses the LIFO priorities whereas the second track prioritizes FIFO to address the oldest pending cases. *Id.* USCIS has dedicated some of its asylum officers to assist in reducing the backlog on the second track permitting some of the oldest pending applications to be completed in chronological order.").

Therefore, given that USCIS's current LIFO policy requires that certain agents be dedicated to addressing the backlog, the Court cannot accept Plaintiff's allegation that adjudication of her asylum petition is a "mathematical impossibility." Even if an outsized number of new applications come in compared to the number of daily interview slots available, the agents responsible for working on the backlog will eventually, albeit slowly, work through the oldest applications until they reach Plaintiff's application. As a result, Plaintiff's factual allegations are virtually indistinguishable from those cases where courts have routinely found that the LIFO policy constituted a valid rule of reason, and that the alleged delay was not so unreasonable as to amount

to an APA violation.[6] *See e.g.*, *Nascimento v. United States Dep't of Homeland Sec.*, 689 F. Supp. 3d 1245, 1251 (S.D. Fla. 2023); *Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1318 (S.D. Fla. 2023). Consequently, because Plaintiff's factual allegations do not plausibly undermine the fact that USCIS's LIFO policy is a valid rule of reason which does not deprive Plaintiff of her right to have her asylum application reviewed, the Court rejects that portion of Judge Elfenbein's R&R and dismisses Count I.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation, **ECF No. [22]**, is **ADOPTED in part and REJECTED in part**.

2. The Report and Recommendation is adopted to the extent it recommends dismissing Count II, but rejected to the extent it recommends permitting Plaintiff to proceed on Count I.

3. Defendants' Motion to Dismiss, **ECF No. [11]**, is **GRANTED**.

4. Plaintiff's Complaint, **ECF No. [1]**, is **DISMISSED WITHOUT PREJUDICE**.

5. To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

---

[6] Plaintiff does not contend that, even if USCIS did eventually review her asylum application, the current delay would be unreasonable, and the requested relief would therefore still be appropriate. As such, the Court need not consider the remaining *TRAC* factors to determine whether the requested agency action has been unreasonably delayed here. *See Tikhonov v. Mayorkas*, No. 23-24572-CIV, 2024 WL 4692146, at *4 (S.D. Fla. Nov. 6, 2024) (describing the following 6 *TRAC* factors courts typically balance to determine whether agency action has been unreasonably delayed: "(1) the time agencies take to make decisions must be governed by a 'rule of reason,' (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake, (4) the court should consider the effect of expediting delayed agency action on agency activities of a higher or competing priority, (5) the court should also take into account the nature and extent of the interests prejudiced by the delay, and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed'").

Case No. 25-cv-21846-BLOOM/Elfenbein

6. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 12, 2026.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record